UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Gary D. Dodge

    v.                                      Civil No. 05-cv-249-JD

Jo Anne B. Barnhart, Commissioner,
Social Security Administration

O R D E R

Gary D. Dodge brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the decision by the Commissioner of the Social Security Administration, denying his application for social security benefits and supplemental security income.  Dodge contends that the decision must be reversed because substantial evidence does not support the residual functional capacity found by the Administrative Law Judge ("ALJ") Robert Klingebiel, due to the ALJ's failure to consider or understand medical evidence from Dodge's treating physicians, his failure to develop the record, and his failure to pose appropriate hypothetical questions to the vocational expert. The Commissioner moves to affirm the decision.

Background

Gary D. Dodge injured his back at work on April 23, 2001. The injury caused lower back pain and pain primarily in his right leg and both hands. He was seen in the emergency room on May 1, 2001, because of back pain. At that time, Dr. George McLaren noted that Dodge was morbidly obese, did not appear to be in significant pain, and was limited by the size of his legs and abdomen in his ability to do leg raising, while other mobility was not limited. A subsequent x-ray showed no abnormalities.

On May 10, 2001, Dodge saw Dr. Taylor Caswell and reported that he was taking Flexeril and Tylenol for pain in his back and right leg. Dr. Caswell found no abnormalities on examination and concluded that Dodge's complaints of pain indicated a possible herniated disc or muscular low back problems. He prescribed medication to reduce swelling. A CT scan taken on June 1, 2001, showed a disc bulge with no narrowing or herniation. Dr. Caswell explained to Dodge that surgery was not needed. He subsequently diagnosed a lumbar sprain with radiculopathy and referred Dodge for a lumbar epidural steroid injection. Dodge had the injection in July of 2001. At the end of July, Dr. Caswell referred Dodge for physical therapy.

Dodge changed primary care physicians in October of 2001, when he saw Dr. Glen Adams. Despite Dodge's complaints of low

back pain radiating into his legs and numbness in his left leg, Dr. Adams found no abnormalities and only mild tenderness in his lower back.  He described Dodge's prognosis as fair, recommended that he continue physical therapy, and kept him out of work.  Dodge continued with physical therapy.

Dr. Adams saw Dodge again on November 7, 2001, for continuing complaints of low back pain radiating into his legs, numbness in his left leg, and cramping in his feet.  Dodge reported that he had been able to unload a pickup truck load of firewood and stack it, although the work caused him pain.  He also reported that he was uncomfortable when standing or sitting for prolonged periods and needed to be able to change position.  Dr. Adams noted that Dodge was very obese and found no explanation for his complaints.  He recommended that Dodge continue with physical therapy.

Dodge continued physical therapy and saw Dr. Adams during 2002.  He was also treated at the Spine Center without significant improvement in his symptoms.  At one appointment, Dodge complained of ringing in his left ear and was evaluated in June of 2002 for tinnitus.  His ear examination showed some hearing loss at high frequencies but was otherwise normal.  Dr. Adams assessed Dodge as having chronic back pain.

At the request of his attorney, Dodge was examined by Dr.

Victor Gennaro on November 11, 2002.  Dodge was able to bend forward only a few degrees but the remainder of his examination was normal.  Dr. Gennaro noted Dodge's weight and that he appeared to be generally deconditioned.  He referred Dodge for further testing to see if the source of his pain could be determined.  The test results were consistent with previous findings.  Dr. Gennaro told Dodge that weight loss surgery would be a good idea because substantial weight loss and exercise would likely resolve most of his problems.

    In January of 2003, Dodge was interviewed by a social worker in preparation for gastric bypass surgery.  The social worker found that Dodge relied on denial about his eating habits and obesity and was unrealistic about a successful postoperative recovery.  Dodge continued to see Dr. Adams and Dr. Gennaro through 2003.  Neither his complaints nor the doctors' evaluations changed during that time.

    On February 7, 2003, an agency physician reviewed Dodge's records and completed a residual functional capacity assessment, concluding that Dodge could perform work at the light level and that he could sit, stand, or walk for a total of six hours in an eight hour day with alterations in position.  The agency physician found no limitations in pushing or pulling, limited other activities to occasional, and found that Dodge should avoid

concentrated exposure to noise.  Dodge had a formal residual functional capacity assessment done on July 17, 2003.  He demonstrated the ability to lift up to twenty pounds occasionally in three of five categories and fifteen pounds in the other two, and up to ten pounds frequently, to stand and walk occasionally for fifteen to thirty minutes at a time, and to sit for up to two hours at a time.  Lifting with his left arm was limited, but other activities were not limited beyond being able to do them occasionally.  The evaluator noted that Dodge would be able to do more than he had demonstrated during the test.

On December 16, 2003, Dr. Gennaro stated that Dodge could not return to his former work as a mechanic but that he was probably able to work at a light or sedentary level on a full time basis if he had an opportunity to sit and rest during the day.  In February of 2004, however, Dr. Gennaro provided a more limited assessment of Dodge's abilities.  On February 25, 2004, Dr. Adams completed a residual functional assessment of Dodge.  He stated that Dodge could occasionally lift only ten pounds and could frequently lift less than ten pounds.  He stated that Dodge could stand or walk for two hours during an eight-hour work day and that he could sit for six hours.  He found that Dodge was limited in his ability to reach and that he should avoid heights.  In response to an inquiry from Dodge's attorney, Dr. Gennaro

wrote on February 27, 2005, that based on the formal assessment done in July of 2003, Dodge would be limited to lifting fifteen pounds or less over any significant period.  He interpreted the assessment to indicate that Dodge could walk and stand for up to two hours in an eight hour day.  He also stated that Dodge was limited in a variety of activities, particularly overhead reaching.

Dodge filed for social security benefits on October 22, 2002, alleging an inability to work since April 23, 2002, due to a back injury.  His application was denied and then went directly to the hearing stage of the administrative process.  ALJ Klingebiel held a hearing on March 3, 2004.  At the hearing, Dodge testified that his pain had worsened since his injury in April of 2001 and that he did not agree with the results of the formal residual functional capacity assessment that was done in July of 2003.  He said that he was able to watch television, read, make meals, and feed wild turkeys, which required him to carry a gallon of milk or two pounds of turkey feed.  He also said that he could drive, including a four-wheeler which he used to get to a fishing spot.

A vocational expert also testified at the hearing.  The ALJ asked what work Dodge would be able to do if he could lift no more than twenty pounds, could not be exposed to loud noise, and

needed a sit or stand option.  The vocational expert testified that Dodge could not return to his work as a mechanic, but that he could do work as a bench worker, a packer, a small parts assembler, and a machine operator and he gave the Dictionary of Occupational Titles listing for each area of work.  In response to questions from Dodge's counsel, the vocational expert included the sedentary job of jewel stringer.

ALJ Klingebiel issued his decision on June 12, 2004.  He described Dodge as a fifty-four year old man, with an eighth grade education and no skills that were transferable from his former work.  He found that Dodge could not return to his former work but that he retained the ability to lift twenty pounds occasionally and ten pounds frequently, and to sit, stand, and work for a total of six hours in an eight-hour work day as long as he had the ability to alternate positions as needed.  Based on that assessment and the jobs identified by the vocational expert at the hearing, the ALJ concluded that Dodge was not disabled.

On appeal, the Appeals Council concluded that the ALJ's finding that Dodge was able to do work at the light level was supported by substantial evidence in the record.  The Appeals Council affirmed the ALJ's decision that Dodge was not disabled before March 5, 2004, when Dodge turned fifty-five.  Because of his age as of March 5, 2004, however, the Appeals Council

determined Dodge was disabled under the Medical-Vocational Guidelines rule after that date.

## Discussion

The court must uphold a final decision of the Commissioner denying benefits unless the decision is not supported by substantial evidence or was based on an incorrect legal standard. Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Manso-Pizarro v. Sec'y of Healthy & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). In making the disability determination, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence." Irlanda Ortiz v. Sec'y of health & Human Serbs., 955 F.2d 765, 769 (1st Cir. 1991).

Dodge's application was denied at step five of the sequential evaluation process set forth in 20 C.F.R. § 404.1520 and § 416.920.[1] At step five, the Commissioner has the burden to

---

[1] Disability insurance benefits are governed by Part 404 of Title 20 while supplemental security income is governed by Part 416 of Title 20. See Barnhart v. Thomas, 540 U.S. 20, 24 (2003); Mills v. Apfel, 244 F.3d 1, 2 n.1 (1st Cir. 2001).

show that despite the applicant's severe impairment, he retained the residual functional capacity to do work other than his prior work and that work the applicant can do exists in significant numbers in the relevant economies.  See Seavey, 276 F.3d at 5; Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).  The opinion of a vocational expert constitutes substantial evidence to support the Commissioner's decision at step five as long as the hypothetical circumstances posed to the vocational expert accurately reflected the claimant's residual functional capacity. Rose v. Sec'y of Health & Human Servs., 35 F.3d 13, 19 (1st Cir. 1994); Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374 (1st Cir. 1982).

Dodge argues that substantial evidence does not exist in the record to support the ALJ's determination that he is able to do work at the light level.  In particular, Dodge points to certain findings in the July 2003 assessment and the opinions of his treating physicians, Dr. Adams and Dr. Gennaro, that he believes show he was not capable of light work; he asserts that the Dictionary of Occupational Titles descriptions of the jobs identified by the vocational expert conflict with the ALJ's findings; he contends that the ALJ was obligated to contact his treating physicians to clarify their opinions, and he contends that the ALJ's hypothetical to the vocational expert does not

provide substantial evidence because it was based on an erroneous capacity assessment. The Commissioner disputes Dodge's interpretation of the record.

An assessment of an applicant's residual functional capacity determines the applicant's ability to do work-related activities on a sustained basis, meaning eight hours each day and five days each week. See Hynes v. Barnhart, 379 F. Supp. 2d 220, 224 (D.N.H. 2004) (quoting SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996)). The assessment is an administrative decision, made by the ALJ on behalf of the Commissioner, that is based on a consideration of record evidence, including the opinions and statements of the applicant's medical sources. Id. An ALJ, as a lay person, is not permitted to interpret raw medical data but instead must rely on the opinions of professionals unless the record shows little impairment and would allow a commonsense assessment. Manso-Pizarro, 76 F.3d. at 17. Therefore, if the ALJ disagrees with a treating physician's opinion or assessment, the ALJ must provide a clear explanation of the evidentiary basis of his contrary determination. See Hynes, 379 F. Supp. 2d at 224.

Dodge is correct that the opinions of his treating physicians as to his residual functional capacity conflict with the residual functional capacity assessment done in July of 2003

and with the ALJ's finding that he was capable of work at the light level.  Although the ALJ cited the part of the administrative record that contained the treating physicians' opinions, he did not provide any reasons or explanation for rejecting those opinions.  As such, the ALJ's finding on residual functional capacity is incomplete and not supported by substantial evidence.[2]

In addition, there appears to be a conflict between the DOT descriptions of the jobs identified by the vocational expert, which entail at least moderate noise levels, and the ALJ's finding that Dodge "should avoid environments in which he would be exposed to noise."  Decision, finding #6.  At the hearing, the ALJ limited his hypothetical to jobs that were not "in a very noisy factory setting with a lot of loud noises, particularly if [he] had to interact with other employees."  Trans. at 62.  The ALJ's finding, however, was more limited, suggesting that Dodge could not work in environments where he would be exposed to noise at all.  On remand, the ALJ must address the noise issue and

---

[2]Although the vocational expert identified work at the sedentary level that Dodge could do, the ALJ did not make any findings as to Dodge's ability to do that job.  Therefore, that evidence is not pertinent to the Commissioner's decision.  It is unfortunate that the ALJ did not address that part of the evidence, which might have saved the additional time and expense of a remand where the record indicates strongly that Dodge was not disabled.

either explain his finding in more detail to resolve the apparent conflict or seek additional vocational expert opinion as to jobs Dodge could do.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse and remand (document no. 8) is granted. The Commissioner's motion to affirm (document no. 10) is denied. The case is remanded for further administrative proceedings under sentence four of § 405(g). The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

December 6, 2005

cc:  David L. Broderick, Esquire
     Karen B. Nesbitt, Esquire